Timothy W. Emery
**EMERY REDDY, PLLC**
600 Stewart St, Ste 1100
Seattle, WA 98101
Telephone: (206) 442-9106
Facsimile: (206) 441-9711
emeryt@emeryreddy.com

M. Anderson Berry *(pro hac vice* forthcoming)
Gregory Haroutunian *(pro hac vice* forthcoming)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| TAMEKA MONTGOMERY and STERLING SIMEON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>          v.<br><br>SNAP FINANCE LLC and SNAP RTO LLC,<br><br>                    Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs Tameka Montgomery and Sterling Simeon ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), bring this Class Action Complaint against Snap Finance LLC and Snap RTO LLC ("Snap" or "Defendants"), and allege upon personal knowledge as to their own actions and the investigation of their counsel, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1.      Plaintiffs bring this Class Action Complaint against Defendants for their failure to adequately secure and safeguard electronically stored, personally identifiable information ("PII") that Defendants collected and maintained. Defendants collected and maintained, and then allowed unauthorized third persons access to, an extraordinary amount of sensitive PII, including, without limitation: Social Security numbers, names, Driver's License numbers, and financial information.

2.      Defendant Snap Finance LLC is a Utah limited liability company based in South West Valley, Utah, and Snap RTO LLC is a Utah limited liability company based in Salt Lake City, Utah. The two entities refer to themselves collectively as "Snap."[1]

3.      Defendants are in the financial services industry, they are in the "lease to own" lending business with "fast" loans, which can range as high as $5,000 dollars.[2]

4.      As a result of their business, Defendants maintain sensitive financial and other personal information about individuals.

5.      Plaintiffs and Class Members entrusted Defendants with their PII. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendants assumed legal and equitable duties to those individuals.

6.      Defendants understand the importance of protecting such information. For example, on one of Defendants' websites, it states "How Snap protects your information," and explains that:

> Snap stores and processes your information maintaining physical, electronic and procedural safeguards. We maintain physical security measures to guard against unauthorized access to systems and use safeguards such as firewalls and data encryption.

---

[1] Office of Maine Attorney General, *Data Breach Notifications*, (Dec. 2, 2022), https://apps.web.maine.gov/online/aeviewer/ME/40/d193f4eb-a877-4395-9a3c-8b94833c907c.shtml (last visited Dec. 13, 2022).
[2] Snap, https://snapfinance.com/how-it-works, (last visited on Dec. 13, 2022).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

We enforce physical access controls to our buildings, and we authorize access to personal information only for those employees or contractors who require it to fulfill the responsibilities of their jobs.[3]

7.      Despite these proclamations, Defendants informed customers, which included Plaintiffs and Class Members, on or about December 1, 2022 in a "Notice of Data Breach" ("Notice") that their PII had been compromised between June 23, 2022 and September 8, 2022 ("Data Breach").[4] Defendants also claimed they "completed" their "comprehensive review" on October 28, 2022, yet they do not say when they discovered the Data Breach.[5]

8.      Defendants had completed their "comprehensive review" for over a month before they notified Plaintiffs and Class Members about the data breach and have offered no explanation for this delay.

9.      The PII that was compromised in the Data Breach was compromised due to Defendants' negligent, careless, and intentional acts and omissions and the failure to protect the PII of Plaintiffs and Class Members.

10.     Plaintiffs and Class Members face an ongoing and lifetime risk of identity theft, which is heightened by the exposure of their Social Security numbers.

11.     Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendants' failure to: (i) adequately protect the PII of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of their inadequate information security practices; and (iii) avoid sharing the PII of Plaintiffs and Class Members without adequate safeguards. Defendants conduct amounts to negligence and violates federal and state statutes.

---

[3] Snap Privacy Policy,  https://snapfinance.com/legal/privacy (last visited Dec. 13, 2022).
[4] Office of Maine Attorney General, *Data Breach Notifications*, (Dec. 2, 2022), https://apps.web.maine.gov/online/aeviewer/ME/40/d193f4eb-a877-4395-9a3c-8b94833c907c.shtml (last visited Dec. 13, 2022).
[5] *Id.*

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

12.     Plaintiffs and Class Members have suffered concrete injury as a result of Defendants' conduct. These injuries include: (i) fraudulent misuse of the stolen PII that is fairly traceable to this Data Breach; (ii) lost or diminished value of PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (v) the present and immediate risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

13.     Defendants disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiffs' and Class Members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized criminal third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

14.     Plaintiff Tameka Montgomery is a resident and citizen of Chicago, Illinois. Plaintiff Montgomery is acting on her own behalf and on behalf of others similarly situated. Defendants obtained and continue to maintain Plaintiff Montgomery's PII, including, but not

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

limited to, her name, Social Security number, Driver's License number, and financial information. Defendants have a legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff Montgomery would not have entrusted her PII to Defendants had she known that they would fail to maintain adequate data security. Plaintiff Montgomery's PII was compromised and disclosed as a result of the Data Breach.

15.    Plaintiff Sterling Simeon is a citizen and resident of Norwalk, California. Plaintiff Simeon is acting on his own behalf and on behalf of others similarly situated. Defendants obtained and continue to maintain Plaintiff Simeon's PII, including, but not limited to, his name, Social Security number, Driver's License number, and financial information. Defendants have a legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff Simeon would not have entrusted his PII to Defendants had he known that they would fail to maintain adequate data security. Plaintiff Simeon's PII was compromised and disclosed as a result of the Data Breach.

16.    Defendant Snap Finance LLC is a Utah limited liability company with its principal place of business in South West Valley, Utah.

17.    Defendant Snap RTO LLC is a Utah limited liability company with its principal place of business in South Salt Lake City, Utah.

18.    All of Plaintiffs' and Class Members' claims stated herein are asserted against Defendants and any of their owners, predecessors, successors, subsidiaries, agents and/or assigns. As the corporate relationship between the two Defendants and other possible defendants is not fully known, Plaintiffs and Class Members reserve the right to amend the complaint should the facts and the evidence necessitate it.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

## JURISDICTION AND VENUE

19.      This Court has subject matter jurisdiction over this action under 28 U.S.C.

§ 1332(d)(2) because this is a class action wherein the amount of controversy exceeds the

sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in

the proposed class, and at least one member of the class is a citizen of a state different from

Defendants. Plaintiffs are citizens of Illinois and California, respectively, and therefore diverse

from Defendants, which are both headquartered in Utah.

20.      This Court has personal jurisdiction over Defendants because Defendants have

their principal places of business within this District.

21.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because both

Defendants' headquarters are located in this District, and they conduct much of their business

through this District.

## FACTUAL ALLEGATIONS

### Background

22.      Snap is in the business of providing "lease to own financing" for consumer items

as well as other kinds of loans and extensions of credit.[6] Snap touts its ability to allow customers

to purchase items quicky, and to "pay over time." It allows people to purchase items over time

and make payments.

23.      Snap uses a network of over 150 retailers whereby Snap customers can use Snap's

loans and loan payment structures to pay for goods and services over time.[7] Snap claims it allows

customers to pay the loan when they receive their paycheck, which, for all intents and purposes,

---

[6]Snap, *How it Works*, https://snapfinance.com/how-it-work, (last visited on Dec. 13, 2022).
[7] *Id.*

CLASS ACTION COMPLAINT - 6

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

makes it a "payday lender." On information and belief, in the ordinary course of business, Defendants collect sensitive personal and private information from their customers such as:

- Demographic information (i.e., first and last name, home address, phone number, email address, and date of birth);

- Social Security numbers;

- Driver's License or state identification numbers; and

- Financial information.

24.    Plaintiffs and Class Members relied on these sophisticated Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members demand security to safeguard their sensitive PII.

25.    Defendants had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from involuntary disclosure to third parties.

***The Data Breach***

26.    According to Defendants, "earlier this year" Defendants discovered suspicious activity in their computer "environment."  Upon investigation, Defendants discovered that between June 23, 2022 and September 8, 2022 unauthorized third parties accessed their computer "environment." On or about October 28, 2022, Defendants concluded their investigation and determined that the data accessed contained the PII of Plaintiffs and Class Members. Although Defendants identified suspicious activity much earlier, and had completed their investigation by October 28, 2022 such that they knew which information and of whom was impacted, Defendants

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

did not warn those most at risk—Plaintiffs and Class Members—until December 1, 2022.[8]

27.    On December 1, 2022, Defendants transmitted to Plaintiffs and Class Members the Notice letter informing them of the Data Breach, in which their PII was compromised. The Notice stated that, between June 23, 2022 and September 8, 2022, an unauthorized actor accessed certain information (their PII) stored on Defendants' network through cyber-attack or "hacking" incident. This means that not only did the cybercriminals view and access the PII without authorization, but they also removed Plaintiffs' and Class Members' PII. In the Data Breach, these criminals acquired the most damaging kind of PII to be exposed to unauthorized third parties: Social Security numbers, Driver's License and State identification numbers, and financial information.

28.    Due to Defendants' inadequate and insufficient data security measures, Plaintiffs and Class Members now face an increased risk of fraud and identity theft and must live with that threat forever. Plaintiffs believe their PII was both stolen in the Data Breach and is still in the hands of the cybercriminal "hackers". Plaintiffs further believe their PII was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals who perpetrate cyberattacks of the type that occurred here.

29.    Defendants had obligations to Plaintiffs' and Class Members' to safeguard their PII and to protect it from unauthorized access and disclosure.

30.    Plaintiffs and Class Members provided their PII to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

---

[8] Office of Maine Attorney General, *Data Breach Notifications*, (Dec. 2, 2022), https://apps.web.maine.gov/online/aeviewer/ME/40/d193f4eb-a877-4395-9a3c-8b94833c907c.shtml (last visited Dec. 13, 2022).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

31.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the financial industry preceding the date of the breach.

32.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[9]

33.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities…are attractive to ransomware criminals… because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[10]

34.     The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in the Defendant's industry, including Defendant.

### Defendants Did Not Use Reasonable Security Procedures

35.     Despite this knowledge, Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive, non-encrypted information they were maintaining for Plaintiffs and Class Members, causing their PII to be exposed.

36.     To prevent and detect cyber-attacks Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

---

[9] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (*available at*: https://notified.idtheftcenter.org/s/), at 6 (last visited on Dec. 13, 2022).
[10] FBI, Secret Service Warn of Targeted, Law360 (Nov. 18, 2019), *available at*: https://www.law360.com/articles/1220974/fbi- secret-service-warn-of-targeted-ransomware (last visited Dec. 13, 2022).

CLASS ACTION COMPLAINT - 9

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

37.    To prevent and detect cyber-attacks Defendants could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks;

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

traffic[11]

38.    To prevent and detect cyber-attacks attacks Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-    Apply latest security updates
-    Use threat and vulnerability management
-    Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-    Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

-    Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

-    Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

-    Monitor for adversarial activities
-    Hunt for brute force attempts
-    Monitor for cleanup of Event Logs
-    Analyze logon events;

**Harden infrastructure**

-    Use Windows Defender Firewall
-    Enable tamper protection
-    Enable cloud-delivered protection
-    Turn on attack surface reduction rules and [Antimalware Scan Interface]

---

[11] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at:* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Dec. 13 , 2022).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

for Office [Visual Basic for Applications].[12]

39.    Given that Defendants were storing the PII of Plaintiffs and Class Members, Defendants could and should have implemented all of the above measures to prevent and detect cyber-attacks.

40.    The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of an undisclosed amount of current and former consumers, including Plaintiffs and Class Members.

***Securing PII and Preventing Breaches***

41.    Defendants could have prevented this Data Breach by properly securing and encrypting the PII of Plaintiffs and Class Members. Alternatively, Defendants could have destroyed the data that was no longer useful, especially outdated data.

42.    Defendants' negligence in safeguarding the PII of Plaintiffs and Class Members was exacerbated by the repeated warnings and alerts directed to businesses to protect and secure sensitive data.

43.    Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

---

[12] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at*: https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Dec. 13, 2022).

CLASS ACTION COMPLAINT - 12

*Defendant Failed to Comply with FTC Guidelines*

43.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

44.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[13] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[14]

45.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[13] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Dec. 13, 2022).
[14] *Id*.

CLASS ACTION COMPLAINT - 13

46.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47.    Defendants failed to properly implement basic data security practices.

48.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

49.    Defendants were at all times fully aware of their obligation to protect the PII of Plaintiffs and Class Members. Defendants were also aware of the significant repercussions that would result from their failure to do so.

***Defendants Failed to Comply with Industry Standards***

50.    Several best practices have been identified that at a minimum should be implemented by Defendants' companies, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data. Defendants failed to follow these industry best practices.

51.    Other best cybersecurity practices that are standard in the lead exchange industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

52.     Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

53.     These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendants failed to comply with these accepted standards thereby opening the door to the cyber incident and causing the Data Breach.

***Value of Personally Identifiable Information***

54.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[15] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[16]

---

[15] 17 C.F.R. § 248.201 (2013).
[16] *Id*.

CLASS ACTION COMPLAINT - 15

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

55.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Personal Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[17] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[18] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[19]

56.    Social Security numbers, for example, are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[20]

57.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility

---

[17] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Dec. 13, 2022).

[18] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Dec. 13, 2022).

[19] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Dec. 13, 2022).

[20] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Dec. 13, 2022).

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

58.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[21]

59.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, Driver's License number, addresses, and financial information.

60.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[22]

61.     Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

62.     Driver's License numbers are also incredibly valuable. "Hackers harvest license numbers because they're a very valuable piece of information. A driver's license can be a critical

---

[21] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Dec. 13 , 2022).

[22] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Dec. 13, 2022).

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

part of a fraudulent, synthetic identity – which go for about $1200 on the Dark Web. On its own, a forged license can sell for around $200."[23]

63.    According to national credit bureau Experian:

A driver's license is an identity thief's paradise. With that one card, someone knows your birthdate, address, and even your height, eye color, and signature. If someone gets your driver's license number, it is also concerning because it's connected to your vehicle registration and insurance policies, as well as records on file with the Department of Motor Vehicles, place of employment (that keep a copy of your driver's license on file), doctor's office, government agencies, and other entities. Having access to that one number can provide an identity thief with several pieces of information they want to know about you.

Next to your Social Security number, your driver's license number is one of the most important pieces of information to keep safe from thieves.[24]

64.    According to cybersecurity specialty publication CPO Magazine, "[t]o those unfamiliar with the world of fraud, driver's license numbers might seem like a relatively harmless piece of information to lose if it happens in isolation."[25] However, this is not the case. As cybersecurity experts point out:

It's a gold mine for hackers. With a driver's license number, bad actors can manufacture fake IDs, slotting in the number for any form that requires ID verification, or use the information to craft curated social engineering phishing attacks.[26]

65.    Victims of driver's license number theft also often suffer unemployment benefit fraud, as described in a recent New York Times article.[27]

---

[23] *See* https://www.forbes.com/sites/leemathews/2021/04/20/hackers-stole-customers-license-numbers-from-geico-in-months-long-breach/?sh=3e4755c38658 (last visited Dec. 13, 2022).

[24] Sue Poremba, *What Should I Do If My Driver's License Number is Stolen?"* (October 24, 2018) https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/ (last accessed Dec. 13, 2022).

[25] *See* https://www.cpomagazine.com/cyber-security/geico-data-breach-leaks-drivers-license-numbers-advises-customers-to-watch-out-for-fraudulent-unemployment-claims/ (last accessed Dec. 13, 2022).

[26] *Id.*

[27] *How Identity Thieves Took My Wife for a Ride,* NY Times, April 27, 2021 https://www.nytimes.com/2021/04/27/your-money/identity-theft-auto-insurance.html (last visited Dec. 13, 2022).

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

66.    The fraudulent activity resulting from the Data Breach may not come to light for years.

67.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[28]

68.    At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, including Social Security numbers, Driver's License numbers, and financial account information, and of the foreseeable consequences that would occur if Defendants' data security system and network was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

69.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

70.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' server(s), amounting to potentially thousands of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

---

[28] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited Dec. 13, 2022).

CLASS ACTION COMPLAINT - 19

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

71.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members. The ramifications of Defendants' failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers and financial information, fraudulent use of that information and damage to victims may continue for years.

***Plaintiff Tameka Montgomery's Experience***

72.     Plaintiff Montgomery suffered actual injury from having her PII compromised and/or stolen as a result of the Data Breach. Plaintiff Montgomery suffered actual injury in the form of damages to and diminution in the value of her personal and financial information – a form of intangible property that the Plaintiff Montgomery entrusted to Defendants for the purpose of applying for credit and which was compromised in, and as a result of, the Data Breach.

73.     Plaintiff Montgomery suffers present, imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by her personal and financial information being placed in the hands of criminals who have already misused such information stolen in the Data Breach.

74.     Plaintiff Montgomery has a continuing interest in ensuring that her PII, which remains in the possession of Defendants, is protected and safeguarded from future breaches.

75.     As a result of the Data Breach, Plaintiff Montgomery made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching the Data Breach; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

services offered by Defendants. Plaintiff Montgomery has spent several hours dealing with the Data Breach, valuable time Plaintiff Montgomery otherwise would have spent on other activities.

76.     As a result of the Data Breach, Plaintiff Montgomery has been notified by her credit monitoring service that unknown, unauthorized third parties have attempted to apply for credit using her Private Information. As a result of these credit inquiries, her credit score has suffered.

77.     As a result of the Data Breach, Plaintiff Montgomery has suffered anxiety as a result of the release of her PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of identity crimes, fraud, and theft.  Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

78.     Plaintiff Montgomery suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII, a form of property that Defendants obtained from her; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft and fraud.

79.     As a result of the Data Breach, Plaintiff Montgomery anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

*Plaintiff Sterling Simeon's Experience*

80.    Plaintiff Simeon suffered injury from having his PII compromised and/or stolen as a result of the Data Breach. Plaintiff Simeon suffered actual injury in the form of damages to and diminution in the value of his personal and financial information – a form of intangible property that the Plaintiff Simeon entrusted to Defendants for the purpose of applying for credit and which was compromised in, and as a result of, the Data Breach.

81.    Plaintiff Simeon suffers present, imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by his personal and financial information being placed in the hands of criminals who have already misused such information stolen in the Data Breach.

82.    Plaintiff Simeon has a continuing interest in ensuring that his PII, which remains in the possession of Defendants, is protected and safeguarded from future breaches.

83.    As a result of the Data Breach, Plaintiff Simeon made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching the Data Breach; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; and researching credit monitoring and identity theft protection services offered by Defendants. Plaintiff Simeon has spent several hours dealing with the Data Breach, valuable time Plaintiff Simeon would have spent on other activities.

84.    As a result of the Data Breach, Plaintiff Simeon has suffered anxiety as a result of the release of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for purposes of identity crimes, fraud, and theft. Plaintiff Simeon is very concerned about identity

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

85.    Plaintiff Simeon suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendants obtained from his; (b) violation of his privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft and fraud.

86.    As a result of the Data Breach, Plaintiff Simeon anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.  As a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ALLEGATIONS

87.    Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4) and/or 23(c)(5), Plaintiffs bring this Action on behalf of themselves and on behalf of all other persons similarly situated. Plaintiffs propose the following Class and Subclass definitions, subject to amendment as appropriate:

**All United States residents whose Personally Identifiable Information ("PII") was accessed on Defendants' system(s) in the Data Breach and who were sent a notice of the Data Breach (the "Class");**

**All California residents whose PII was accessed on Defendants' system(s) in the Data Breach and who were sent a notice of the Data Breach (the "California Subclass");**

**All Illinois residents whose PII was accessed on Defendants' system(s) in the Data Breach and who were sent a notice of the Data Breach (the "Illinois Subclass");**

88.    Excluded from the Class are the following individuals and/or entities: Defendants

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

89.     Plaintiffs reserve the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

90.     This action is brought and may be maintained as a class action because there is a well-defined community of interest among many persons who comprise a readily ascertainable class. A well-defined community of interest exists to warrant class wide relief because Plaintiffs and all members of the Classes were subjected to the same wrongful practices by Defendants, entitling them to the same relief.

91.     **Numerosity.** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, public news reports indicate that approximately 61,302 individuals had their PII compromised in this Data Breach. The identities of Class Members are ascertainable through Defendants' records, Class Members' records, publication notice, self-identification, and other means.

92.     **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.     Whether and to what extent Defendants had a duty to protect the PII of Plaintiffs and

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Class Members;

b.  Whether Defendants had a duty not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

c.  Whether Defendants had a duty not to use and PII of Plaintiffs and Class Members for non-business purposes;

d.  Whether Defendants failed to adequately safeguard the PII of Plaintiffs and Class Members;

e.  Whether and when Defendants actually learned of the Data Breach;

f.  Whether Defendants adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.  Whether Defendants violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

k.  Whether Plaintiffs and Class Members are entitled to actual damages, nominal damages, and/or statutory damages as a result of Defendant's wrongful conduct;

l.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

m.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

93.    **Typicality.** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class member, was compromised in the Data Breach.

94.    **Adequacy of Representation.** Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

95.    **Predominance.** Defendants have engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

96.    **Superiority.** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

97.     Defendants have acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

98.     Likewise, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Defendants owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

    b.  Whether Defendants' security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    c.  Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

    d.  Whether Defendants failed to take commercially reasonable steps to safeguard consumer PII; and

    e.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the data breach.

99.     Finally, all members of the proposed Class are readily ascertainable. Defendants have access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendants.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

## COUNT I
### Negligence
### (On Behalf of Plaintiffs and the Class)

100.    Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 99.

101.    Defendants knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

102.    Defendants had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII.

103.    Defendants had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if the data were wrongfully disclosed.

104.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes by which they could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

105.    Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair. . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

106.    Defendants were subject to an "independent duty," untethered to any contract between Defendants and Plaintiffs or Class Members.

107.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices, including sharing and/or storing the PII of Plaintiffs and Class Members on its computer systems.

108.    Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and Class Members, the critical importance of providing adequate security of that data, and the necessity for encrypting all data stored on Defendants' systems.

109.    Defendants' own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Defendants' misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also included their decisions not to comply with industry standards for the safekeeping of the PII of Plaintiffs and Class Members, including basic encryption techniques freely available to Defendants.

110.    Plaintiffs and Class Members had no ability to protect their PII that was in, and possibly remains in, Defendants' possession.

111.    Defendants were in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

112.    Defendants had and continue to have a duty to adequately disclose that the PII of Plaintiffs and Class Members within Defendants' possession might have been compromised, how

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

113.    Defendants had a duty to comply with the industry standards set out above.

114.    Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within Defendants' possession.

115.    Defendants, through its actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

116.    Defendants, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII within Defendants' possession might have been compromised and precisely the type of information compromised.

117.    Defendants' breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

118.    As a result of Defendants' ongoing failure to notify Plaintiffs and Class Members regarding the type of PII has been compromised, Plaintiffs and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

119.    Defendants' breaches of duty caused Plaintiffs and Class Members to suffer from identity theft, fraud, loss of time and money to monitor their finances for fraud, and loss of control over their PII.

120.    As a result of Defendants' negligence and breach of duties, Plaintiffs and Class Members are in danger of present and continuing harm in that their PII, which is still in the

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

possession of third parties, will be used for fraudulent purposes. Plaintiffs and Class Members will need identity theft protection services and credit monitoring services for their respective lifetimes, considering the immutable nature of the PII at issue, which includes Social Security numbers and Driver's License numbers.

121.    There is a close causal connection between Defendants' failure to implement security measures to protect the PII of Plaintiffs and Class Members and the harm, or risk of imminent harm, suffered by Plaintiffs and Class Members. The PII of Plaintiffs and Class Members was stolen and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PII, by adopting, implementing, and maintaining appropriate security measures.

122.    Plaintiffs seek the award of actual damages on behalf of themselves and the Class.

123.    In failing to secure Plaintiffs' and Class Members' PII and promptly notifying them of the Data Breach, Defendants are guilty of oppression, fraud, or malice, in that Defendants acted or failed to act with a willful and conscious disregard of Plaintiffs' and Class Members' rights. Plaintiffs, therefore, in addition to seeking actual damages, seeks punitive damages on behalf of himself and the Class.

124.    Plaintiffs seek injunctive relief on behalf of the Class in the form of an order compelling Defendants to institute appropriate data collection and safeguarding methods and policies with regard to customer information.

## COUNT II
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

125.    Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 99.

CLASS ACTION COMPLAINT - 31

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

126.    Through their course of conduct, Defendants, Plaintiffs, and Class Members entered into implied contracts for the Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' PII.

127.    Defendants induced Plaintiffs and Class Members to provide and entrust their PII, including name, including, without limitation: Social Security numbers, first and last names, Drivers' License and State Identification numbers, and financial information.

128.    Defendants solicited and invited Plaintiffs and Class Members to provide their PII as part of its regular business practices. Plaintiffs and Class Members accepted Defendants' offer and provided PII to Defendants.

129.    As a condition of being customers of Defendants, Plaintiffs and Class Members provided and entrusted their PII to Defendants. In so doing, Plaintiffs and Class Members entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and Class Members if their data had been breached and compromised or stolen.

130.    A meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their PII to Defendants, in exchange for, amongst other things, the protection of their PII.

131.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendants.

132.    Defendants breached the implied contracts they made with Plaintiffs and Class Members by failing to safeguard and protect their PII, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

133.　　As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiffs and Class Members have suffered (and will continue to suffer), ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

134.　　As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiffs and Class Members sustained damages as alleged herein.

135.　　Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

### COUNT III
### Invasion of Privacy
### (On Behalf of Plaintiffs and the Class)

136.　　Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 99.

137.　　Plaintiffs and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

138.　　Defendants owed a duty to Plaintiffs and Class Members to keep their PII confidential.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

139.    Defendants intentionally failed to protect and released to unknown and unauthorized third parties the non-redacted and non-encrypted PII of Plaintiffs and Class Members.

140.    Defendants allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiffs and Class Members, by way of Defendants' failure to protect the PII.

141.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiffs and Class Members is highly offensive to a reasonable person.

142.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiffs and Class Members disclosed their PII to Defendants as part of their relationships with Defendants, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

143.    The Data Breach at the hands of Defendants constitutes an intentional interference with Plaintiffs' and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

144.    Defendants acted with intention and a knowing state of mind when they permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

145.    Because Defendants acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and Class Members.

146.    As a proximate result of the above acts and omissions of Defendants, PII of Plaintiffs and Class Members was disclosed to third parties without authorization, causing Plaintiffs and Class Members to suffer damages.

147.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and Class Members in that the PII maintained by Defendants can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiffs and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and Class Members.

## COUNT IV
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class)

148.    Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 99.

149.    This count is plead in the alternative to the breach of implied contract count above.

150.    Plaintiffs and Class Members conferred a monetary benefit to Defendant when they provided their PII to receive Defendants' services.

151.    Defendants knew that Plaintiffs and Class Members conferred a monetary benefit to Defendants when they accepted and retained that benefit. Defendants profited from this monetary benefit, as the transmission of PII to those companies to whom Defendants makes service referrals is an integral part of Defendants' business. Without transmitting Plaintiffs' and

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Class Members' PII to third-parties, Defendants would have dramatically diminished business and profits.

152.   Defendants were supposed to use some of the monetary benefit provided to them from Plaintiffs and Class Members to secure the PII belonging to Plaintiffs and Class Members by paying for costs of adequate data management and security.

153.   Defendants should not be permitted to retain any monetary benefit belonging to Plaintiffs and Class Members because Defendants failed to implement necessary security measures to protect the PII of Plaintiff and Class Members.

154.   Defendants gained access to the Plaintiffs' and Class Members' PII through inequitable means because Defendants failed to disclose that it used inadequate security measures.

155.   Plaintiffs and Class Members were unaware of the inadequate security measures and would not have provided their PII to Defendants had they known of the inadequate security measures.

156.   To the extent that this cause of action is pled in the alternative to the others, Plaintiffs and Class Members have no adequate remedy at law.

157.   As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of Plaintiffs and Class Members; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

158.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

159.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds from the monetary benefit that they unjustly received from them.

<u>**COUNT V**</u>
**VIOLATIONS OF CALIFORNIA'S CONSUMER PRIVACY ACT,**
**Cal. Civ. Code § 1798.100, *et seq.* ("CCPA")**
**(On Behalf of Plaintiff Simeon and the California Subclass Against All Defendants)**

44.    Plaintiff Sterling Simeon ("Plaintiff" for purposes of this Count) and the California Subclass re-allege and incorporate paragraphs 1-99 as if fully set forth herein.

45.    This Count is brought on behalf of Plaintiff and the California Subclass against all Defendants.

46.    Defendants violated section 1798.150(a) of the CCPA, Cal. Civ. Code § 1798.150(a), by failing to prevent Plaintiff Simeon's and the California Subclass' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII.

47.     The non-redacted and non-encrypted PII of Plaintiff Simeon and the California Subclass was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendants' violations of their duty under the CCPA.

48.     Plaintiff Simeon and the California Subclass lost money or property, including but not limited to the loss of legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as a direct and proximate result of Defendants' acts described above.

49.     Defendants knew, or should have known, that their network computer systems and data security practices were inadequate to safeguard PII and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect PII, such as properly encrypting the PII so in the event of a data breach an unauthorized third party cannot read the PII. As a result of the failure to implement reasonable security procedures and practices, the PII of Plaintiff and members of the California Subclass was exposed.

50.     Defendants are organized for the profit or financial benefit of their owners and collect PII as defined in Cal. Civ. Code § 1798.140.

51.     Plaintiff and the California Subclass seek injunctive or other equitable relief to ensure that Defendants hereinafter adequately safeguard PII by implementing reasonable security procedures and practices. This relief is important because Defendants still hold PII related to Plaintiff Simeon and the California Subclass. Plaintiff Simeon and the California Subclass have an interest in ensuring that their PII is reasonably protected.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

52.    Pursuant to § 1798.150(b) of the CCPA, Plaintiff Simeon gave written notice to Defendants of their specific violations of section 1798.150(a) by certified mail dated December 14, 2022. If Defendants do not "actually cure" the effects of the Data Breach, which would require retrieving the PII or securing the PII from continuing and future use, within 30 days of delivery of the CCPA notice letter (which Plaintiff Simeon believes any such cure is not possible under these facts and circumstances), Plaintiff Simeon intends to amend this complaint to seek actual damages, and statutory damages of no less than $100 and up to $750 per customer record subject to the Data Breach, on behalf of the California Subclass as authorized by the CCPA.

## COUNT VI
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT,
### 815 Ill. Comp. Stat. § 505/1, *et seq*. ("CFA")
### (On Behalf of Plaintiff Tameka Montgomery and the Illinois Subclass Against All Defendants)

53.    Plaintiff Tameka Montgomery ("Plaintiff," for purposes of this Count) and the Illinois Subclass re-allege and incorporate paragraphs 1-99 as if fully set forth herein.

54.    Plaintiff bring this claim on behalf of herself and the Illinois Subclass. This Count is brought against Defendants.

55.    Plaintiff and the Illinois Subclass are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e). Plaintiff, the Illinois Subclass, and Defendants are "persons" as defined in 815 Ill. Comp. Stat. § 505/1(c).

56.    Defendants are engaged in "trade" or "commerce," including the provision of services, as defined under 815 Ill. Comp. Stat. § 505/1(f). Defendants engage in the sale of "merchandise" (including services) as defined by 815 Ill. Comp. Stat. § 505/1(b) and (d).

57.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment and omission of material facts in connection with the sale and advertisement

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

of their services in violation of the CFA, including: (1) failing to maintain adequate data security to keep Plaintiff and the Illinois Subclass's sensitive PII from being stolen by cybercriminals and failing to comply with applicable state and federal laws and industry standards pertaining to data security, including the FTC Act; (2) failing to disclose or omitting material facts to Plaintiff and the Illinois Subclass regarding their lack of adequate data security and inability or unwillingness to properly secure and protect the PII of Plaintiff and the Illinois Subclass; (3) failing to disclose or omitting material facts to Plaintiff and the Illinois Subclass about Defendants' failure to comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the PII of Plaintiff and the Illinois Subclass; and (4) failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff's and the Illinois Subclass's PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

58.     These actions also constitute deceptive and unfair acts or practices because Defendants knew the facts about their inadequate data security and failure to comply with applicable state and federal laws and industry standards would be unknown to and not easily discoverable by Plaintiff and the Illinois Subclass and defeat their reasonable expectations about the security of their PII.

59.     Moreover, Defendants represented that they would maintain the data they collected in a secure manner and endeavor to keep it safe from unauthorized access and exfiltration.

60.     Defendants intended that Plaintiff and the Illinois Subclass rely on their deceptive and unfair acts and practices and the concealment and omission of material facts in connection with Defendants' offering of goods and services.

CLASS ACTION COMPLAINT - 40

61.     Defendants' wrongful practices were and are injurious to the public because those practices were part of Defendants' generalized course of conduct that applied to the Illinois Subclass. Plaintiff and the Illinois Subclass have been adversely affected by Defendants' conduct and the public was and is at risk as a result thereof.

62.     Defendants also violated 815 ILCS 505/2 by failing to immediately notify Plaintiff and the Illinois Subclass of the nature and extent of the Data Breach pursuant to the Illinois Personal Information Protection Act, 815 ILCS 530/1, *et seq.*

63.     As a result of Defendants' wrongful conduct, Plaintiff and the Illinois Subclass were injured in that they never would have provided their PII to Defendants, or purchased Defendants' services, had they known or been told that Defendants failed to maintain sufficient security to keep their PII from being hacked and taken and misused by others.

64.     As a direct and proximate result of Defendants' violations of the CFA, Plaintiff and the Illinois Subclass have suffered harm, including actual instances of identity theft; loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; financial losses related to the payments or services made to Defendants that Plaintiff and the Illinois Subclass would not have made had they known of Defendants' inadequate data security; lost control over the value of their PII; unreimbursed losses relating to fraudulent charges; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

65.     Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiff and the Illinois Subclass seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Defendants' violations of the CFA.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendants and that the Court grant the following:

A.    For an Order certifying the Class, and appointing Plaintiffs and his Counsel to represent the Class;

B.    For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiffs and Class Members;

C.    For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

    i.    prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendants to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

    iv.    requiring Defendants to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiffs' and Class Members' respective

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

lifetimes;

v.    requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiffs and Class Members;

vi.    prohibiting Defendants from maintaining the PII of Plaintiffs and Class Members on a cloud-based database;

vii.    requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

viii.    requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix.    requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

x.    requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

xi.    requiring Defendants to conduct regular database scanning and securing checks;

xii.    requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xiii.  requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv.  requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xv.  requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi.  requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii.  requiring Defendants to implement logging and monitoring programs

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

sufficient to track traffic to and from Defendants' servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.      For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands that this matter be tried before a jury.


Date: December 14, 2022          Respectfully Submitted,

                                 */s/ Timothy W. Emery*
                                 Timothy W. Emery
                                 EMERY REDDY, PLLC
                                 600 Stewart St, Ste 1100
                                 Seattle, WA 98101
                                 Telephone: (206) 442-9106
                                 Facsimile: (206) 441-9711
                                 emeryt@emeryreddy.com

                                 M. Anderson Berry *(pro hac vice forthcoming)*
                                 Gregory Haroutunian *(pro hac vice forthcoming)*
                                 CLAYEO C. ARNOLD,
                                 A PROFESSIONAL LAW CORP.
                                 865 Howe Avenue
                                 Sacramento, CA 95825
                                 Telephone: (916) 239-4778

Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

*Attorneys for Plaintiff and the Putative Class*

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711